# United States Court of Appeals

**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

---

Argued May 1, 2009     Decided August 7, 2009

No. 08-5088

NEILAND COHEN,
APPELLANT

v.

UNITED STATES OF AMERICA,
APPELLEE

---

Consolidated with 08-5093, 08-5174

---

Appeals from the United States District Court
for the District of Columbia
(No. 1:07-cv-00051)

---

*Michael A. Bowen* and *Robert J. Cynkar* argued the cause for appellants. With them on the briefs were *Jonathan W. Cuneo*, *Marc B. Dorfman*, *Henry D. Levine*, *Charles Tiefer*, *Mark C. Rifkin*, *Mark D. Griffin*, and *Randy J. Hart*.

*Ellen Page DelSole*, Attorney, U.S. Department of Justice, argued the cause for appellee. With her on the brief were *Gilbert S. Rothenberg*, Acting Deputy Assistant Attorney

General, *Jeffrey A. Taylor*, U.S. Attorney, and *Teresa E. McLaughlin*, Attorney. *R. Craig Lawrence*, Assistant U.S. Attorney, entered an appearance.

Before: GARLAND, BROWN, and KAVANAUGH, *Circuit Judges*.

Opinion for the Court filed by *Circuit Judge* BROWN.

Dissenting opinion filed by *Circuit Judge* KAVANAUGH.

BROWN, *Circuit Judge*: Comic-strip writer Bob Thaves famously quipped, "A fool and his money are soon parted. It takes creative tax laws for the rest." In this case it took the Internal Revenue Service's ("IRS" or "the Service") aggressive interpretation of the tax code to part millions of Americans with billions of dollars in excise tax collections. Even this remarkable feat did not end the IRS's creativity. When it finally conceded defeat on the legal front, the IRS got really inventive and developed a refund scheme under which almost half the funds remained unclaimed. Now the IRS seeks to avoid judicial review by insisting the notice it issued, acknowledging its error and announcing the refund process, is not a binding rule but only a general policy statement.

We conclude the notice bound the Service, tax collectors, and taxpayers. Accordingly, we reverse the district court's dismissal of Appellants' claims made under the Administrative Procedures Act ("APA"). We further determine Appellant Neiland Cohen filed his refund claim prematurely and, thus, affirm the district court's dismissal of his refund claim.

I

The Internal Revenue Code imposes a three percent excise tax on phone calls. 26 U.S.C. § 4251. Telephone service providers collect the tax and pay it over to the IRS. *See id.* § 4291. The Code taxes only communications charges that vary with distance and transmission time. *Id.* § 4252(b). Decades ago, these requirements posed no problem as phone companies based their billing on multiple factors, including the key components of distance and time. *Nat'l R.R. Passenger Corp. v. United States*, 431 F.3d 374, 375 (D.C. Cir. 2005). The telecommunications revolution has changed all that: many consumers now pay strictly based on transmission time— frequently, rates no longer vary based on the distance of a call. *Id.* Despite recognizing this shift, the IRS continued to collect taxes on all long-distance communications. *See* IRS Not. 2005-79 (Oct. 20, 2005) ("Notice 2005-79"); *see also* IRS Rev. Rul. 79-404, 1979-2 C.B. 382 (determining communication between ships at sea or other offshore facilities and telephone subscribers in the United States were subject to the excise tax though the charges varied only based on transmission time).

Multiple corporate taxpayers brought suit seeking refunds and several circuits, including this one, concluded time-only rate structures render calls nontaxable under the Code. *Nat'l R.R. Passenger*, 431 F.3d at 375–76. While these lawsuits proceeded, the IRS remained adamant regarding the continuing applicability of the excise tax. After it lost an appeal in the Eleventh Circuit, *see Am. Bankers Ins. Group v. United States*, 408 F.3d 1328 (11th Cir. 2005), the Service issued Notice 2005-79, which declared it would continue to litigate the applicability of the tax and directed phone service providers to continue collecting the tax, even from individuals in the Eleventh Circuit's jurisdiction. Notice 2005-79. It ordered taxpayers to continue paying the tax but permitted place-holder refund claims

"for overpayments." *Id.* Taxpayers were advised, however, the Service would not process these claims while related cases pended in federal courts of appeals. *Id.*

The IRS lost in every circuit that considered its application of § 4251. Five circuits held the tax inapplicable to long-distance calls charged without reference to the distance variable. *Nat'l R.R. Passenger*, 431 F.3d 374; *Reese Bros., Inc. v. United States*, 447 F.3d 229 (3d Cir. 2006); *Fortis, Inc. v. United States*, 447 F.3d 190, 191 (2d Cir. 2006); *OfficeMax, Inc. v. United States*, 428 F.3d 583 (6th Cir. 2005); *Am. Bankers Ins. Group*, 408 F.3d at 1338. In response, on May 26, 2006, the IRS issued Notice 2006-50. *See* IRS Not. 2006-50 (May 26, 2006) ("Notice 2006-50"). The notice announced the discontinuation of the excise tax for phone charges based solely on transmission time and the refund process for taxes erroneously collected between February 28, 2003 and August 1, 2006. *Id.*

Under Notice 2006-50, individual taxpayers had to request their refund or credit on their 2006 federal income tax returns. *Id.* This requirement extended to individuals who otherwise did not need to file income tax returns. *Id.* Taxpayers could either request a "safe harbor" amount, which required no documentation, or the actual amount of tax they paid, for which the IRS could demand documentation. *Id.* § 5(c).

Various lawsuits arose challenging the refund process. *See In re Long-Distance Telephone Service Federal Excise Tax Refund Litigation*, Docket No. 1798 (J.P.M.L. Dec. 28, 2006) (Transfer Order). The Multidistrict Litigation ("MDL") Panel centralized and transferred three district court cases into an MDL proceeding before the United States District Court for the District of Columbia. *Id.*, slip op. at 2. The district court dismissed the cases after concluding Appellants failed to exhaust their administrative remedies for their refund claims and

failed to state valid claims under federal law, including the APA, 5 U.S.C. § 702. The district court also ruled their claims for injunctive and declaratory relief were mooted by the IRS's decision to discontinue the tax on time-based phone charges. *In re Long-Distance Tel. Serv. Federal Excise Tax Refund Litigation*, 539 F. Supp. 2d 281, 287 (D.D.C. 2008). Appellants appeal the district court's dismissal of their APA claims. Appellant Cohen appeals the district court's conclusion that he failed to meet jurisdictional exhaustion requirements.

II

We review *de novo* the district court's dismissal of Appellants' APA claims for failure to state a claim upon which relief can be granted, *Kassem v. Wash. Hosp. Ctr.*, 513 F.3d 251, 253 (D.C. Cir. 2008), as well as the dismissal of Appellant Cohen's refund claim for lack of subject-matter jurisdiction, *Nat'l Taxpayers Union, Inc. v. United States*, 68 F.3d 1428, 1432 (D.C. Cir. 1995). Applying this standard, we reverse the dismissal of Appellants' APA claims, but affirm the dismissal of Cohen's refund claim.

A

Before delving into the propriety of the district court's dismissal, we pause to consider jurisdiction. The IRS raises two challenges to our jurisdiction: (1) the Anti-Injunction Act ("AIA"), which provides "no suit for the purpose of restraining the assessment or collection of any tax shall be maintained in any court by any person, whether or not such person is the person against whom such tax was assessed," 26 U.S.C. § 7421(a), and (2) the Declaratory Judgment Act ("DJA"), which allows for declaratory relief but specifically excludes federal taxes from its reach, 28 U.S.C. § 2201(a). As these acts

are coterminous, *Investment Annuity v. Blumenthal*, 609 F.2d 1, 4 (D.C. Cir. 1979), we address them jointly. They do not apply.

At the district court, Appellants made various claims for injunctive and declaratory relief as well as claims under the APA. *In re Long-Distance Tel. Serv.*, 539 F. Supp. 2d at 287–99. On appeal, however, Appellants only press the APA claims asking us to strike down the IRS's refund regime as unlawful or, alternatively, to remand the issue to the district court. Appellants do not seek to restrain the assessment or collection of taxes and the requested relief, if granted, could not result in impermissible restraints. As such, on the unusual facts of this case, neither the AIA nor the DJA apply.[1]

We also step back to contemplate the basis of our jurisdiction. After all, this is not your typical tax case. In a run-of-the-mill case, taxpayers litigate who has the right to disputed funds, along with incidental quarrels over the IRS's procedures, in the context of a suit for refund. This pattern exists for good reason: usually the taxpayer's goal is to get his money back and the only way to do this is to bring a refund claim. *Enochs v. Williams Packing & Navigation Co.*, 370 U.S. 1, 7 (1962) (the tax code "require[s] that the legal right to the disputed sums be determined in a suit for refund"). To accomplish this, taxpayers must strictly comply with the refund procedures set forth in the tax code, including the obligation under § 7422 to file an administrative claim with the IRS before filing suit. *United States v. Clintwood Elkhorn Mining Co.*, 128 S. Ct. 1511, 1515 (2008).

But this case is different: the fight is over process, not disputed funds. The IRS has conceded it did not have the right

---

[1] We need not decide whether the relief sought constitutes a declaratory judgment as, regardless, the DJA does not apply.

to collect the excise tax for phone charges based solely on transmission time in the first place and, with the exception of Appellant Cohen's separate claim addressed *infra*, Appellants no longer seek a refund in this suit. *See* Appellants' Reply Br. 5. They seek to challenge the procedural obstacles the IRS inserted between individual taxpayers and their right to file suit to recover unlawfully collected taxes. They, therefore, request that we review and overturn Notice 2006-50. This presents us with a wrinkle. The tax code waives sovereign immunity and grants district courts original jurisdiction only for civil actions for the recovery of taxes. 28 U.S.C. § 1346(a)(1). So, under what authority do we review Appellants' APA claims and is that review permissible in light of the tax code's vigorous limits on judicial intervention?

Federal jurisdiction to hear this administrative challenge lies not in the tax code, but in our federal question jurisdiction. *See Road Sprinkler Fitters Local Union 669 v. Herman*, 234 F.3d 1316, 1319 (D.C. Cir. 2000) (quoting 28 U.S.C. § 1331) (Federal courts have jurisdiction over "'all civil actions arising under the . . . laws . . . of the United States,' including those brought under the APA."); 28 U.S.C. § 1291. The APA waives the government's sovereign immunity, and thus permits the exercise of jurisdiction, in actions seeking non-monetary relief with respect to agency action. 5 U.S.C. § 702. This waiver applies as long as another statute does not limit judicial review or forbid the type of relief sought. *Id.*

The tax code deprives federal courts of jurisdiction over suits "*for the recovery of* any internal revenue tax alleged to have been erroneously or illegally assessed or collected, . . . or of any sum alleged to have been excessive or in any manner wrongfully collected, until a claim for refund or credit has been duly filed." 26 U.S.C. § 7422(a) (emphasis added). As a result, no suit for refund can be brought under the APA—taxpayers

looking to recoup funds must proceed under the refund scheme set forth in the tax code. Rather, only in the anomalous case where the wrongful assessment is not disputed and litigants do not seek a refund is a standalone claim under the APA viable. This is that case.

Of course, Appellants hope to parlay a victory in this suit into a successful suit for recovery. But these aspirations are too remote to transform these APA claims into a suit for refund. Even if Notice 2006-50 were struck down as unlawful, Appellants still may achieve only a pyrrhic victory. Moreover, Appellants' desire to pursue refunds later, depending on the outcome of this litigation, is perfectly acceptable and has no bearing on the nature of their claims or the remedy to which they now may be entitled. Most taxpayers seek "proper tax treatment" in addition to invalidation of a flawed regulation. Kristin E. Hickman, *A Problem of Remedy: Responding to Treasury's (Lack of) Compliance with Administrative Procedure Act Rulemaking Requirements*, 76 GEO. WASH. L. REV. 1153, 1185 (2008). The possibility that this suit may help create a later opportunity for Appellants to pursue a refund in compliance with the dictates of the tax code does not affect our jurisdiction.

With our jurisdiction established, we consider Appellants' APA claims. The APA affords causes of action to parties adversely affected by agency action. 5 U.S.C. §§ 702, 704; *Trudeau v. FTC*, 456 F.3d 178, 185 (D.C. Cir. 2006). Section 704, however, limits judicial review to "[a]gency action made reviewable by statute and final agency action for which there is no other adequate remedy in a court." 5 U.S.C. § 704. A substantive rule constitutes a binding final agency action and is reviewable. *Id.* § 704. Courts review substantive rules to ensure, *inter alia*, the agency acted in a reasonable manner within its statutory authority and promulgated the rules in

accordance with the notice-and-comment requirements of the APA. *Id.* § 706. A general statement of policy, on the other hand, is exempt from notice-and-comment rulemaking requirements and is not a "final agency action," rendering it unreviewable. *Id.* §§ 553, 704.

Appellants assert Notice 2006-50 constitutes final agency action that "arbitrarily, unreasonably, and unlawfully limits restitution of the funds unlawfully exacted." *In re Long-Distance Tel. Serv. Fed. Excise Tax Refund Litig.*, 501 F. Supp. 2d 34, 38–39 (D.D.C. 2007). To determine whether Notice 2006-50 is a binding standard, and thus a final and reviewable agency action, we consider whether it (1) marked the "consummation" of the IRS's decisionmaking process and (2) either affects legal "rights or obligations" or results in "legal consequences." *Bennett v. Spear*, 520 U.S. 154, 177–78 (1997). We conclude Notice 2006-50 operates as a substantive rule that binds the IRS, excise tax collectors, and taxpayers.

Notice 2006-50 marked the culmination of the IRS's deliberations on the refund process for individual taxpayers. Once the IRS conceded it owed taxpayers approximately $8 billion, it had to administer the refunds. That is where the agency ran into trouble. Congress had provided a refund method—but only via the service providers who collected the taxes. 26 U.S.C. § 6415(a). Congress had not anticipated taxpayers might wish to seek their refunds directly, rather than relying on the industriousness or responsiveness of the intermediary tax collectors. The IRS overcame this glitch by issuing Notice 2006-50, agreeing to refund the amounts paid for nontaxable long-distance service to individual taxpayers who claimed their refunds on their 2006 federal income tax returns. Notice 2006-50, § 5(a). The notice is not equivocal, nor is it "of a merely tentative or interlocutory nature," *Bennett*, 520 U.S. at 178. It clearly concluded the IRS's decisionmaking process.

We turn, then, to consider whether the notice produced legal consequences. First, we inquire whether the language and the content of the notice bound the IRS or "genuinely [left] the agency and its decisionmakers free to exercise discretion." *Ctr. for Auto Safety v. NHTSA*, 452 F.3d 798, 806 (D.C. Cir. 2006) (alteration in original). After that, we consider whether the notice alters the legal rights or obligations of tax collectors or taxpayers.

"The primary distinction between a substantive rule— really any rule—and a general statement of policy . . . turns on whether an agency intends to bind itself to a particular legal position." *Syncor Int'l Corp. v. Shalala*, 127 F.3d 90, 94 (D.C. Cir. 1997). To that end, the language an agency uses when it characterizes its action can be telling. *Ctr. for Auto Safety*, 452 F.3d at 806–07; *see also Nat'l Ass'n of Home Builders v. Norton*, 415 F.3d 8, 14 (D.C. Cir. 2005) (finding Department of Interior survey protocols were policy statements in part because agency documents repeatedly characterized them as "recommended rather than mandatory" and because of "the voluntary nature of the language" used in the protocols). We have given decisive weight to agencies' use of mandatory words like "will" instead of permissive words like "may." *Compare Am. Bus Ass'n v. United States*, 627 F.2d 525, 532 (D.C. Cir. 1980) (finding the use of "will" indicates a statement is a binding norm) *with Guardian Fed. Savings & Loan Ass'n v. FSLIC*, 589 F.2d 658, 667 (D.C. Cir. 1978) (finding the use of "may" indicates a statement is a general statement of policy). Notice 2006-50 is laden with mandatory language. *See, e.g.*, Notice 2006-50, § 1(a) (stating that the IRS "will follow the holdings" of five circuits that deemed service time-only rate structures nontaxable); *id.* ("[T]he government will no longer litigate this issue."). Additionally, it does not include the classic "weasel words" through which agencies try—with variable success—to reserve discretion for themselves. *See, e.g.*, *Wilderness Soc'y v.*

*Norton*, 434 F.3d 584, 595–96 (D.C. Cir. 2006); *Appalachian Power Co. v. EPA*, 208 F.3d 1015, 1022–23 (D.C. Cir. 2000).

Moreover, the IRS made several commitments that curb the agency's discretion. For instance, the notice declares the agency's decision to follow the holdings of the five circuits that concluded time-only rate structures make calls nontaxable under the Code. Notice 2006-50 § 1(a). Having finally admitted "amounts paid for time-only service are not subject to the tax imposed by § 4251," *id.*, the IRS can hardly go back now and try to collect taxes on these calls. The notice also created an obligation for the IRS to process and pay properly requested refunds. Under the tax code the IRS usually has discretion as to whether it will process refund requests. *See, e.g.*, 26 U.S.C. § 6532(a)(1) (providing a six-month window in which the IRS *may* render a decision on refund claims prior to litigation, but creating no obligation for it to do so); *see also Milbank v. Duggan*, 131 F.2d 898, 900 (2d Cir. 1942) (stating the purpose of 26 U.S.C. § 3772(a)(2), predecessor to 26 U.S.C. § 6532, was "to give the Commissioner six months after he becomes aware that the taxpayer has called upon him to act"). The IRS would retain the same discretion here, had it not pledged "to credit or refund the amounts paid for nontaxable service if the taxpayer requests the credit or refund in the manner prescribed in this Notice." Notice 2006-50 § 5(a). As counsel for the IRS conceded during oral argument, through the notice the IRS obligated itself to process and pay refund claims if the requests conform to the notice's requirements. Tr. of Oral Arg. at 35–37.

The IRS argues the statutory scheme leaves the decision of whether or not to process refund requests entirely up to the Service's discretion and the IRS's method for exercising its discretion is unreviewable under the APA, 5 U.S.C. § 701(a)(2). Indeed, the Supreme Court has concluded the tax code was designed "'to advise the appropriate officials of the demands or

claims intended to be asserted, so as to insure an orderly administration of the revenue,' to provide that refund claims are made promptly, and to allow the IRS to avoid unnecessary litigation by correcting conceded errors." *Clintwood Elkhorn Mining Co.*, 128 S. Ct. at 1519 (quoting *United States v. Felt & Tarrant Mfg. Co.*, 283 U.S. 269, 272 (1931)). The IRS urges Notice 2006-50 amounts to no more than a policy statement explaining how the Service will exercise its statutory discretion with respect to refunds of nontaxable communications excise taxes.

Due to the inverted posture of this refund case, the IRS's policy-based arguments fail. We agree the tax code favors IRS flexibility in the administration of refunds. The IRS's "exceedingly strong interest in financial stability," *id.*, is at its peak when the Service's right to retain the funds is in dispute, but this interest ebbs considerably when, as here, the IRS has conceded it had no right to collect the funds in the first place. When the IRS made that concession, via Notice 2006-50, it did not merely forecast how it intended to exercise its statutory discretion to address a refund claim. Rather, it promulgated a reviewable, substantive rule dictating the future administration of this type of claim. In doing so, the Service forfeited the discretion it retained prior to issuing the notice. Its asymmetry notwithstanding, Notice 2006-50 binds the IRS.

Notice 2006-50 also alters the legal obligations of service providers charged with collecting excise taxes under § 4291. Until the notice issued, the IRS required service providers to collect taxes on purely time-based service charges. *See* Notice 2005-79. Notice 2006-50 directs collectors "to cease collecting and paying over tax under § 4251 on [this] nontaxable service," thereby altering their legal obligations. Notice 2006-50, § 4(c). It is, of course, arguable that the five federal circuit court decisions that declared the services nontaxable actually altered

the service providers' collection obligations, and the IRS merely communicated this fact to them via the notice. *Id.* § 4 (entitled "Effect of ABIG, OfficeMax, Amtrak, Fortis, and Reese Bros."). But, as these excise tax cases demonstrate, the IRS apparently believes it has discretion about whether or when to follow Article III decisions. *See* Notice 2005-79 (directing phone service providers to continue collecting the tax, even from individuals in the Eleventh Circuit's jurisdiction, after the Eleventh Circuit held its application of the statute unlawful and the IRS declined to seek Supreme Court review). In Notice 2006-50, the Service deigned to comply with the courts' holdings and required its collectors to do the same, thus altering the operative legal regime.

Finally, Notice 2006-50 changes taxpayers' rights and obligations. The notice gives taxpayers the right not to pay excise taxes on phone calls for which the charges vary based only on transmission time, and not with distance. Notice 2006-50, § 4(a) ("[T]axpayers are no longer required to pay tax under § 4251 for nontaxable service."); *id.* § 4(c) ("[Collectors] are not required to report to the IRS any refusal by their customers to pay any tax on nontaxable services that is billed after May 25, 2006."). The notice also creates a right to reimbursement. When "the language of the document is such that private parties can rely on it as a norm or safe harbor by which to shape their actions, it can be binding as a practical matter." *See Gen. Elec. Co. v. EPA*, 290 F.3d 377, 383 (D.C. Cir. 2002). Just as Notice 2006-50 created an obligation on the part of the IRS to pay properly requested refunds, it also gave taxpayers the concomitant right to receive a refund if they conformed to the notice's instructions. Notice 2006-50, § 5(a) ("The Commissioner agrees to credit or refund the amounts paid for nontaxable service if the taxpayer requests the credit or refund in the manner prescribed in this Notice.").

The notice also creates taxpayer obligations. On its face, Notice 2006-50 presents a hurdle taxpayers must surmount before they can file suit to recover the funds the IRS illegally took from them. Under § 7422, taxpayers cannot file suit to recover unlawfully exacted taxes "until a claim for refund or credit has been duly filed with the Secretary, according to the provisions of law in that regard, and the regulations of the Secretary established in pursuance thereof." 26 U.S.C. § 7422(a). The notice states "[r]equest[s] must follow this notice" and "a request for this credit or refund on any other form (such as a Form 720, 843, or 8849) will not be processed by the Service." Notice 2006-50, § 5(a). It makes clear that taxpayers cannot seek administrative refunds in any other manner.

The IRS insists taxpayers do not need to follow the notice in order to exercise their right to file suit under § 7422. It claims, "Nothing in [the notice] prohibits taxpayers from submitting otherwise valid claims for refund under the usual statutory procedures for claiming a refund of tax, nor does it in any way sanction taxpayers who elect to use the statutory procedure." Appellee's Br. 58. That's just mean. To go the "statutory" route, as the IRS suggests, places taxpayers in a virtual house of mirrors. Section 7422 requires taxpayers to file a refund claim "with the Secretary, according to the provisions of law in that regard, and the regulations of the Secretary established in pursuance thereof." 26 U.S.C. § 7422. Regulation, 26 CFR § 301.6402-2, enunciates the process for filing a refund claim. Of primary importance here, it dictates the appropriate form for the taxpayer to use. *Id.* § 302.6402-2(c). It states, in relevant part, that "all claims by taxpayers for the refunding of taxes, interest, penalties, and additions to tax shall be made on Form 843." *Id.*[2] Form 843, however, does not

[2] The district court incorrectly states this regulation "directs taxpayers seeking non-income tax refunds to use the appropriate form in this

permit this type of refund claim. At the top of the form, it reads, "**Do not** use Form 843 if your claim is for . . . [a]n overpayment of excise taxes reported on Form(s) 11-c, 720, 730, or 2290." Form 720 is the Quarterly Federal Excise Tax Return on which communications excise taxes, including the excise tax at issue here, are reported by the service providers (who collect and remit the taxes). Therefore, taxpayers cannot use Form 843 to file their refund claim. The instructions for Form 843, however, suggest that taxpayers fill out Form 8849 "to claim a refund of excise taxes other than those resulting from adjustments to [their] reported liabilities" and refers them to IRS Publication 510, *Excise Taxes*, "for the appropriate forms to use to claim excise tax refunds." IRS Publication 510 states, "Do not use Form 8849, Form 720, or Form 843 to make claims for nontaxable service; the IRS will not process these claims." Even if the taxpayer ignored the reference to the IRS publication, Form 8849 itself cautions "**Do not** use Form 8849 . . . to claim any amounts that were or will be claimed on **Schedule C (Form 720),** Claims . . . ." While this language sounds slightly more flexible, taxpayers have no way of knowing whether their service provider has or will claim the nontaxable funds at issue.

---

case, Notice 2006-50." *In re Long-Distance Tel. Serv.*, 539 F. Supp. 2d at 294. But the regulation does not say "use the appropriate form." Rather, it specifically instructs taxpayers to use Form 843 and to refer to "other provisions . . . relating to the particular tax." *Id.* § 302.6402-2(c). No other provisions relating to the refund of these excise taxes apply to individual taxpayers. *See generally*, Code of Federal Regulations, Title 26, Subchapter D, Part 40, *Excise Tax Procedural Regulations*, 26 C.F.R. §§ 40.0-1–40.7701-1; *id.* § 40.0-1(a) (describing that the regulations in part 40 set forth the administrative provisions relating to excise taxes imposed under chapter 33, which includes the long-distance excise tax); *see also* Part 49, Subpart C, *Communications*, 26 C.F.R. §§ 49.4251-1–49.4254-2 (no provisions related to refunds).

Counsel for the IRS took the enigmatic position at oral argument that if the taxpayers had used either Form 843 or Form 8849 to file their refund claims, then IRS's acceptance would have been mandatory and the claims would have sufficed to meet § 7422's jurisdictional exhaustion requirements. Tr. of Oral Arg. at 29–31. But these assertions directly conflict with the cautionary instructions printed in bold typeface on the front of both forms and the explicit directions given in IRS Publication 510. Furthermore, the IRS provided absolutely no authority supporting its position. In reality, unless taxpayers follow the dictates of Notice 2006-50, they run into nothing but dead ends. The "usual statutory procedures for claiming a refund of tax," Appellee's Br. 58, provide no avenue by which individual taxpayers can fulfill their obligations in order to seek judicial review.

The district court implied taxpayers may be able to satisfy the administrative exhaustion requirements of § 7422 by filing an informal claim. *In re Long-Distance Tel. Serv.*, 539 F. Supp. 2d at 309–10 (claiming the notice's refusal to process noncompliant claims "does not mean that a deviant form could not substantially comply with the duly promulgated regulations governing the form of refund claims" and referencing the prerequisites for informal claims to be recognized by the courts for the purpose of administrative exhaustion). Counsel for the IRS defended the position at oral argument. Tr. of Oral Arg. at 29–30 (claiming many courts have upheld the use of informal refund claims). But an informal claim will not solve the 2006-50 conundrum.

Informal refund claims have one limited purpose: to "put[] the IRS on notice that a claim is being made [which] tolls the statute of limitations *until the deficiencies are corrected in a subsequent refund claim*." *Kaffenberger v. United States*, 314 F.3d 944, 954 (8th Cir. 2003) (emphasis added). "The informal

claim doctrine is predicated on the expectation that any formal deficiency will at some point be corrected. To hold otherwise would eliminate, as a practical matter, the formal claim requirement." *Greene-Thapedi v. United States*, 549 F.3d 530, 533 (7th Cir. 2008) (citing *Pala Emples. Profit Sharing Plan v. United States*, 234 F.3d 873, 879 (5th Cir. 2000)).  Thus, a taxpayer may use an informal claim, perfected by a subsequent formal claim, to meet the jurisdictional requirements of § 7422. *Id.*; *United States v. Forma*, 42 F.3d 759, 767 (2d Cir. 1994) (citing *United States v. Kales*, 314 U.S. 186, 194 (1941) (an informal notice "will nevertheless be treated as a claim, where formal defects and lack of specificity have been remedied by amendment filed after the lapse of the statutory period.")).

If, however, the taxpayer fails to perfect the administrative claim with a valid, formal claim, the informal claim will be dismissed for lack of subject-matter jurisdiction.  *Greene-Thapedi*, 549 F.3d at 533; *Kaffenberger*, 314 F.3d at 954 ("Although the regulation states that a claim that fails to comply with the requirements will not be considered as a claim for refund, the Supreme Court has endorsed informal claims . . . that have technical deficiencies, as long as a valid refund claim is subsequently made after the period has run.") (citing § 301.6402-2(b)(1)).  Thus, while taxpayers could initially use informal claims to meet the jurisdictional requirements of § 7422, those claims would need to be perfected by filing formal claims complying with both the statute and regulations.  As discussed above, attempts to follow the "usual" procedures only return taxpayers to the heart of the maze.

Despite the obvious infirmities of these options, the IRS still has the chutzpah to chide taxpayers for failing to intuit that neither the agency's express instructions nor the warning on its forms should be taken seriously.  According to the IRS, taxpayers should have realized all the options the Service said

were closed to them—using forms that proclaim their inapplicability in bold letter or filing informal claims that could not be perfected—were nonetheless sufficient to fulfill their administrative refund obligations and to serve as a prerequisite to judicial review. Not hardly. Taxpayers bear a heavy burden when pursuing refund claims, but we have yet to demand clairvoyance.

The IRS next contends the Appellants are not "aggrieved" as required under the APA, 5 U.S.C. § 702, because Notice 2006-50 did not abrogate their rights to bring civil suit before the district court. As discussed *supra*, the notice provided the only process by which individual taxpayers could seek refunds for the unlawfully exacted excise tax and, according to Appellants, that process was unreasonable. Moreover, the notice gave taxpayers the only discernable method for fulfilling the jurisdictional requirements under § 7422 in order to pursue judicial review for their refund claims.

Section 702 provides standing to a "person suffering [a] legal wrong because of [an] agency action, or [one] adversely affected or aggrieved by agency action within the meaning of a relevant statute." 5 U.S.C. § 702. Analysis under § 702 is akin to the prudential zone of interest test. *Clarke v. Securities Indus. Ass'n*, 479 U.S. 388, 395–97, 399, 400 n.16 (1987). Therefore, Appellants must establish that their injury falls within the "zone of interests" sought to be protected by § 7422. *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 883 (1990). The IRS correctly points out that the main interest the provision protects is the IRS's interest in taking the first crack at refund claims before they are litigated. But Appellants only need to show their "interest is 'arguably' one regulated or protected by 'the statutory provision at issue.'" *Safe Extensions, Inc. v. FAA*, 509 F.3d 593, 600–01 (D.C. Cir. 2007) (quoting *PDK Labs., Inc. v. DEA*, 362 F.3d 786, 791 (D.C. Cir. 2004)). Under

§ 7422, taxpayers must scrupulously follow both the statutory and regulatory rules for filing a refund claim. 26 U.S.C. § 7422. Thus, taxpayers have an interest in having a reasonable refund process available to recover funds unlawfully exacted and to gain access to the courts when they are dissatisfied with the IRS's response. This is at least arguably within the zone of interests protected by § 7422, and that is enough.

In sum, the IRS unlawfully expropriated billions of dollars from taxpayers, conceded the illegitimacy of its actions, and developed a mandatory process as the sole avenue by which the agency would consider refunding its ill-gotten gains. It cannot avoid judicial review of that process by simply designating it a policy statement. Notice 2006-50 constituted a final agency action that aggrieved taxpayers by hindering their access to court. Accordingly, we reverse the district court and remand Appellants' APA claims for further consideration.

***

The dissent argues we do not have jurisdiction to hear Appellants' APA claims. In the dissent's view, the tax exception in the DJA bars Appellants' claims. Our colleague insists the text of the DJA prohibits our review. But binding circuit precedent interpreting the text of the DJA tells us the tax exception is coextensive with the limits described in the more narrowly worded AIA. *Nat'l Taxpayers*, 68 F.3d at 1435 (stating, in 1995, "Because the AIA and DJA operate coterminously, the following analysis of the impact of the AIA upon [the plaintiff's] complaint also determines the effect of the DJA."); *Investment Annuity*, 609 F.2d at 4; *E. Ky. Welfare Rights Org. v. Simon*, 506 F.2d 1278, 1285 n.11 (D.C. Cir. 1974), rev'd on other grounds, 426 U.S. 26 (1976) (explaining the DJA did not originally contain the phrase 'except with respect to Federal taxes,' which Congress added later in order to prevent taxpayers from accomplishing by declaratory judgment

that which was forbidden under the AIA)[3]; *Am. United v. Walters*, 477 F.2d 1169, 1175–76 (D.C. Cir. 1973), rev'd on other grounds, 416 U.S. 752 (1974) ("The breadth of the tax exception of § 2201 is co-extensive with the effect of § 7421(a), and so the applicability of the latter to our situation is determinative of jurisdiction."); *see also Ecclesiastical Order of ISM of AM, Inc. v. IRS*, 725 F.2d 398, 404–05 (6th Cir. 1984).

So, despite its broad language, the DJA bars only declaratory relief sought "for the purpose of restraining the assessment or collection of any tax." The dissent prefers the

---

[3] The dissent complains the precedential status of this case is dubious because it was vacated. The fact that two cases have since re-embraced the rationale as enunciated in *Eastern Kentucky* renders that concern irrelevant. *See Nat'l Taxpayers Union*, 68 F.3d at 1435; *Investment Annuity*, 609 F.2d at 4 (citing *E. Ky. Welfare Rights Org.*, 506 F.2d at 1283–85; *Am. United*, 477 F.2d at 1175–76). To overcome this obstacle to his novel interpretation, the dissent claims neither *National Taxpayers* nor *Investment Annuity* passed on whether the broader language of the DJA or the narrower language of the AIA governs the inquiry. Actually, both cases confirmed that the AIA's applicability controls and conducted the analysis accordingly. *Nat'l Taxpayers*, 68 F.3d at 1435 ("[A]nalysis of the impact of the AIA upon [the plaintiff's] complaint also determines the effect of the DJA."); *Investment Annuity*, 609 F.2d at 4 (recognizing the DJA "is, if anything, more restrictive," but expressly deciding to follow the holdings of *Eastern Kentucky* and *Americans United* and focus the analysis on the AIA). Moreover, for the dissent to ask "coterminous in what direction" and pretend precedent leaves open the question of which statute's language controls is revisionist history. This circuit concluded the provisions are coextensive because Congress only added the tax exception to the DJA to stop taxpayers from using the DJA to circumvent the AIA. *E. Ky. Welfare Rights Org.*, 506 F.2d at 1285 n.11; *Am. United*, 477 F.2d at 1175–76. Thus, we construe the provisions as coterminous for the precise purpose of limiting the scope of the DJA tax exception to the effect of the AIA. *Id.*

broader language of the DJA, and thus wants to interpret the statutes as precluding injunctive and declaratory relief "with respect to Federal taxes." To support this interpretation, the dissent relies on one half of a sentence from *Murphy v. IRS*, 493 F.3d 170, 174 (D.C. Cir. 2007) (addressing whether the IRS could be sued *eo nomine*), which states, " . . . Congress has preserved the immunity of the United States from declaratory and injunctive relief with respect to all tax controversies except those pertaining to the classification of organizations under § 501(c) of the IRC." But this admittedly loose language does not support the dissent's preferred standard. *Murphy* does not purport to analyze the interplay between the AIA and the DJA or even suggest the DJA's broader language controls. *Id.* Nor could it. Just as *stare decisis* compels this panel to follow precedent, so too those same principles confined the *Murphy* court. *Maxwell v. Snow*, 409 F.3d 354, 358 (D.C. Cir. 2005) ("[T]his Court is bound to follow circuit precedent until it is overruled either by an en banc court or the Supreme Court."). The only other support the dissent offers is a law review article. With all due respect to the Academy, we take the law as we find it in the opinions of this circuit. Because the AIA does not apply, the DJA's tax exception likewise does not apply.

The dissent also contends the ripeness doctrine forbids Appellants' "pre-enforcement" APA challenges to Notice 2006-50 and emphasizes that "the majority opinion can cite no case that has permitted a pre-enforcement APA challenge to a tax regulation of this kind." Of course, the dissent similarly cannot point to any case that has disallowed a pre-enforcement APA challenge in a context like this one. It appears the Federal Reporters' silence is deafening on both sides. But that is of no moment, as this is a *post*-enforcement case. To be ripe, typically courts require "some concrete action applying the regulation to the claimant's situation in a fashion that harms or threatens to harm him." *Nat'l Park Hospitality Ass'n v. DOI*, 538 U.S. 803,

808 (2003). Here, Appellants have been barred from pursuing their refunds in court by virtue of the fact that they did not exhaust their administrative remedies under the only available avenue—Notice 2006-50.[4] This post-enforcement case is ripe for review.

We agree that the thrust of legislation and jurisprudence in this area aims at protecting the IRS from draining litigation. That much is evident from the AIA, the DJA, and Congress's decision to relieve the IRS from some, but not all, of the requirements in the APA, *see* 26 U.S.C. § 7852(e). Once the limits of the protections Congress provided have been surpassed, however, the IRS is subject to the same legal requirements as other administrative agencies. And rightfully so. No agency operates beyond the reach of the law. In this odd case, neither the AIA, the DJA, the tax code's statutory exhaustion provision, nor the ripeness doctrine apply to protect the IRS from scrutiny.

B

Under 26 U.S.C. § 6532, taxpayers cannot file suit to recover taxes until six months after filing a valid refund claim with the IRS "unless the Secretary renders a decision thereon within that time." 26 U.S.C. § 6532. Cohen contends the district erred by dismissing his refund claim for lack of subject-matter jurisdiction on the grounds that he filed suit prematurely. We disagree.

---

[4] The district court alludes to other methods for pursuing refund. As discussed *supra*, however, those alternatives are illusory at best. Consequently, while Appellants generally failed to make any attempt reasonably calculated to exhaust their administrative remedies, the only remedy available to exhaust was the process provided by Notice 2006-50.

In November 2005, the same month the IRS issued Notice 2005-79, Appellant Cohen filed a refund claim for excise taxes he paid in 2004 and 2005. *In re Long-Distance Tel. Serv. Fed. Excise Tax Refund Litig.*, 539 F. Supp. 2d at 295. He received a letter from the IRS, dated December 20, 2005, stating they had received his claim but had not resolved it as they had not "completed all the research necessary for a complete response." *Id.* The letter continued, "We will contact you again within 45 days to let you know what action we are taking. You don't need to do anything further now on this matter." *Id.* Cohen received a second letter from the IRS, dated January 4, 2006, which (consistent with Notice 2005-79) stated: "We are unable to process your claim . . . . The tax is currently a subject in litigation and additional information will be provided to you as it is received." *Id.* at 296. Cohen understood this letter as denying his refund claims. *Id.* Thus, he added a refund claim to his ongoing civil suit on February 6, 2006. *Id.*

Cohen asserts the second letter he received from the IRS, dated January 4, 2006, communicated the IRS's "decision" not to voluntarily return Cohen's money and thus triggered his right to sue under the statute. But the letter communicated no such thing. It stated, "We are unable to process your claim . . . . The tax is currently a subject in litigation and additional information will be provided to you as it is received." Taken at face value, the letter merely communicated the IRS would take no action because the tax was "currently" the subject of litigation—an interpretation completely consistent with Notice 2005-79, which similarly notified all taxpayers that the Service would not process refund claims while the excise tax cases were pending in federal appellate courts. Like the general notice, Cohen's letter does not suggest any permanent resolution. In fact, the message specifically contemplates future interaction by promising to provide further information at a later date. Commonsense

dictates a letter pledging to supply "additional information . . . as it is received" does not resolve a matter.

Cohen compares his situation to *Gervasio v. United States*, 627 F. Supp. 428 (N.D. Ill. 1986), where an IRS officer told the plaintiff he could not accept her claim and mailed it back to her. This case, however, is distinguishable. The IRS did not refuse to accept Cohen's claim; it told him why it had not yet been processed and invited him to contact the IRS with any questions. Cohen next accuses the IRS of trying to prevent judicial review by disguising its decision as inaction. This is meritless. Regardless of the IRS's inaction, under the statute Cohen could have brought suit after six months. 26 U.S.C. § 6532. Finally, Cohen urges the IRS made a "decision" when it chose to halt consideration of his claim pending the outcome of litigation, which, for purposes of the statute, triggered his right to file suit. Cohen ignores that it is the IRS's prerogative when or even whether to process his claim. The statute allows the IRS a six-month window in which it *may* act before a claim can be litigated. *Id.* During that time, the IRS can process the claim, ignore the claim, or twiddle its thumbs if it wants to. It can certainly make processing the claim contingent on a condition precedent, such as the completion of pending legal action, even if the realization of that condition could easily occur outside the six-month period. If the IRS's stalling tactic (which it had every right to employ) extended beyond six months, the taxpayer could file suit. If the contingency occurred within the six months, presumably the IRS would issue a decision as it did here. Regardless, the Service's choice to precondition processing on a future event does not give the taxpayer the immediate right to file suit.

After receiving the IRS's letter, Cohen had two safe options: to wait four-and-a-half months until the six-month period expired or to contact the IRS to clarify its intent. As it

stands, he chose not to err on the side of caution, but rather to rely on his own interpretation of a somewhat ambiguously worded missive. He rolled the dice and lost. Accordingly, Cohen's refund claim was premature and the district court rightly concluded it lacked subject-matter jurisdiction.

## III

Appellants invite us to resolve the merits of their claims that IRS's refund procedure was "inadequate and unlawful" under the APA. As the district court did not reach the merits of the claims and because the factual record is not sufficiently developed, we decline. *See, e.g.*, *National Fed'n of Fed. Employees v. Weinberger*, 818 F.2d 935, 937 (D.C. Cir. 1987) (declining to decide the merits of the case where the district court based its decision on a purely jurisdictional issue). Instead, we remand for further proceedings before the district court.

*So ordered.*

KAVANAUGH, *Circuit Judge*, dissenting in part:[1]

Plaintiffs filed suit in federal district court to challenge IRS Notice 2006-50 and to obtain tax refunds larger than those permitted by the Notice. But plaintiffs did not first file refund claims with the IRS. They therefore failed to comply with the statutory exhaustion requirement of 26 U.S.C. § 7422(a), which bars taxpayers from bringing suits for "recovery" of taxes paid "until a claim for refund or credit has been duly filed with the Secretary."

On appeal, plaintiffs creatively seek to end-run the exhaustion requirement by arguing that they are no longer seeking money – at least in this case – but instead are pursuing only a pure Administrative Procedure Act challenge to Notice 2006-50. But as I see it, plaintiffs still face two insurmountable hurdles that preclude the federal courts from entertaining their suit at this time. First, plaintiffs' APA claims seek a judicial declaration that Notice 2006-50 does not provide them sufficient tax refunds and that the Notice is procedurally invalid. But § 2201(a) of title 28 bars courts from entertaining a claim for declaratory relief "with respect to Federal taxes." Second, and in the alternative, the ripeness doctrine precludes pre-enforcement APA challenges to IRS rules of this kind.

As a result of either § 2201(a) or the ripeness doctrine, plaintiffs must raise their arguments about Notice 2006-50 in a refund suit, as authorized by § 7422(a) and 28 U.S.C. § 1346. And they may file such a refund case only after

---

[1] This case involves three consolidated suits. I agree with the majority's decision to dismiss the *Cohen* plaintiffs' suit for the reasons well explained in its opinion. I respectfully disagree with the majority's decision to allow the suit by the *Sloan* and *Gurrola* plaintiffs to go forward. References to "plaintiffs" in this dissenting opinion are to the *Sloan* and *Gurrola* plaintiffs.

complying with the exhaustion requirements of § 7422(a), which they have not done.

It is long established that a refund suit – after exhaustion of administrative remedies – is the proper forum to raise claims about tax laws and regulations. It therefore comes as no surprise that the majority opinion can cite no case that has permitted a pre-enforcement APA challenge to a tax regulation of this kind. Because we should not entertain this suit at this time, I respectfully dissent.

A

In Notice 2006-50, the IRS announced that it would refund excise taxes paid by millions of Americans for long-distance telephone calls billed between February 28, 2003, and August 1, 2006. The Notice informed taxpayers that they could claim refunds on their tax returns for 2006. Those who wanted to claim a standard amount – ranging from $30 to $60 depending on the number of exemptions claimed on Form 1040 – could simply check a box on their returns. Those who wished to claim a greater amount could file a Form 8913 with their returns. And those who would not otherwise file a tax return for 2006 could file a newly created Form 1040EZ-T for the standard amount or claim a greater amount by also completing a Form 8913.

Approximately 90 million Americans followed those simple instructions and promptly received their refunds.

But the plaintiffs involved in this case did not properly seek refunds from the IRS pursuant to those authorized procedures. Instead, they filed suit in federal court and attempted to style the case as a class action on behalf of tens of millions of Americans who paid the improper telephone

excise taxes. Plaintiffs' complaint primarily argued that the refunds authorized by Notice 2006-50 would not fully compensate taxpayers for the telephone excise taxes that had been improperly collected. The complaint alleged, in particular, that taxpayers are entitled to refunds for service taxed before February 28, 2003 – not just from February 28, 2003, to August 1, 2006. The complaint also contended that Notice 2006-50 requires excessive documentation in order to claim an amount above the standard amount – another way of saying that Notice 2006-50 undercompensates many taxpayers for the actual excise taxes paid. The complaint further claimed that Notice 2006-50 was procedurally flawed because the IRS promulgated it without notice and comment. The complaint expressly asked the district court to order additional tax refunds to tens of millions of Americans.

It would have been easy enough for the individual named plaintiffs to first seek refunds from the IRS. And then, if they were denied refunds or did not receive a response within the statutory six-month period under 26 U.S.C. § 6532(a), they could have brought suits challenging the amounts they received or the procedures by which the IRS determined those amounts. For whatever reason, presumably strategic considerations related to their efforts to obtain class certification and significant classwide monetary relief, plaintiffs did not do so.

B

Plaintiffs' failure to exhaust their available remedies with the IRS precludes them from proceeding in federal court at this time.

In the district court, to the extent plaintiffs were seeking money refunds, they ran smack into the exhaustion

requirement of § 7422(a). That statute bars federal courts from entertaining suits for recovery of federal taxes unless and until the taxpayers first seek refunds from the IRS.

On appeal, no doubt recognizing the § 7422(a) exhaustion problem with their refund claims, plaintiffs have simply dropped those arguments and now pursue only a free-standing Administrative Procedure Act challenge to Notice 2006-50. The majority opinion allows those APA claims to proceed.[2] Although I respect the majority opinion's analysis, I disagree with allowing this case to go forward at this time, for two alternative reasons.

*First*, plaintiffs' suit – even as stripped down on appeal – still runs headlong into the phalanx of statutory provisions mandating that challenges to tax laws, regulations, decisions, or actions ordinarily be brought in refund suits after plaintiffs have sought a refund from, and exhausted their administrative remedies with, the IRS. *See* 26 U.S.C. § 7422(a) (exhaustion requirement); *id.* § 7421(a) (Anti-Injunction Act); 28 U.S.C. § 2201(a) (tax exception to courts' power to grant declaratory relief); *see also* 5 U.S.C. § 702 (preserving other limitations on judicial review in APA cases). Those statutory provisions help ensure the efficient administration of the tax system by funneling challenges to the tax laws into one refund procedure and by precluding premature judicial review of disputes involving taxes owed or paid. *See Bob Jones Univ. v. Simon*, 416 U.S. 725, 746-47 (1974).

---

[2] On remand, to the extent plaintiffs ultimately prevail on their argument that Notice 2006-50 was improperly promulgated without notice and comment, the IRS can simply re-promulgate it after notice and comment and, under 26 U.S.C. § 7805(b)(4), make it retroactive to the date of the original Notice.

Of particular relevance here is § 2201(a) of title 28. With their APA claims, plaintiffs seek a judicial declaration that Notice 2006-50 is arbitrary and capricious because it undercompensates them and was adopted in a procedurally improper manner. *See* J.A. 340-42 (*Sloan* complaint) (asking for "declaratory relief" and "a declaratory judgment" and that the court "declare" rights); J.A. 348 (*Gurrola* complaint) (seeking "declaratory relief").[3]

But by enacting § 2201(a) back in 1935, Congress generally barred suits for declaratory relief in cases "with respect to Federal taxes." The text of § 2201(a) squarely precludes this APA suit at this time. It means that plaintiffs must raise their arguments about Notice 2006-50 in a refund suit, as authorized by § 7422, after first seeking refunds from the IRS.[4]

The majority opinion concludes that § 2201(a) does not apply here because this Court has said that § 2201(a) and the

---

[3] Because the APA preserves the limitations on judicial review in other statutes such as § 2201(a), plaintiffs may not use the APA to avoid the limitations of § 2201(a). *See, e.g.*, *Taylor v. United States*, 292 Fed. App'x. 383, 388-89 (5th Cir. 2008) (per curiam) ("as both the Anti-Injunction Act and the Declaratory Judgment Act bar the equitable relief sought by the Taylors, they cannot avail themselves of the APA's waiver of sovereign immunity to seek that relief in the district court"); *Fostvedt v. United States*, 978 F.2d 1201, 1203-04 (10th Cir. 1992) ("§ 702 of the APA does not override the limitations of the Anti-Injunction Act and the Declaratory Judgment Act").

[4] Section 2201(a) would not bar plaintiffs' suit if they had no other legal avenue available to obtain relief. *See South Carolina v. Regan*, 465 U.S. 367, 378-79 (1984). But here, of course, those who wanted to challenge Notice 2006-50 could have brought a refund suit and raised their concerns there.

Anti-Injunction Act are "coterminous." Maj. Op. at 6 (citing *Inv. Annuity, Inc. v. Blumenthal*, 609 F.2d 1, 4 (D.C. Cir. 1979)). By their terms, of course, the statutes are not coterminous: § 2201(a) bars declaratory relief "with respect to Federal taxes," and the Anti-Injunction Act precludes injunctive relief "restraining the assessment or collection of any tax." Despite the statutes' different language, the majority opinion is correct that our cases have said the two statutes are "coterminous."

But coterminous in what direction: (i) coterminously narrow such that the statutes bar declaratory and injunctive relief *restraining the assessment or collection of taxes* or (ii) coterminously broad such that the statutes bar declaratory and injunctive relief *with respect to federal taxes*?

In one recent decision, we indicated that the Anti-Injunction Act and § 2201(a) should be read to be coterminous and broad, barring all declaratory and injunctive relief with respect to Federal taxes. *See Murphy v. IRS*, 493 F.3d 170, 174 (D.C. Cir. 2007). In *Murphy*, citing both § 2201(a) and the Anti-Injunction Act, we said that "Congress has preserved the immunity of the United States from declaratory and injunctive relief with respect to *all* tax controversies except those pertaining to the classification of organizations under § 501(c)" of the Internal Revenue Code. *Id.* (emphasis added).

The *Murphy* statement is consistent, moreover, with the oft-articulated general principle that "the tax field is marked by the general preclusion of advance declaratory or injunctive relief. . . . For most tax issues and most taxpayers, a subsequent action for refund adequately safeguards all appropriate concerns." *Inv. Annuity, Inc. v. Blumenthal*, 609 F.2d 1, 9 (D.C. Cir. 1979). The *Murphy* statement also

corresponds to the case law elsewhere: "Given the breadth of [§ 2201(a)], conclusions by many lower courts that I.R.C. § 7421 and [§ 2201(a)] should be interpreted *in pari materia* seem to derive at least partly from the courts' broad interpretation of I.R.C. § 7421." Kristin E. Hickman, *A Problem of Remedy: Responding to Treasury's (Lack of) Compliance with the Administrative Procedure Act Rulemaking Requirements*, 76 GEO. WASH. L. REV. 1153, 1212 (2008).

In short, reading the two statutes to coterminously bar declaratory and injunctive relief with respect to federal taxes is consistent with precedent, adheres to the plain text of the later-enacted 26 U.S.C. § 2201(a), and corresponds to the well-established principle that challenges to tax regulations should be brought in refund suits. Therefore, to the extent we must read the two statutes coterminously (and as a panel we must, *see infra* n.6), I would read them to bar free-standing suits seeking declaratory and injunctive relief with respect to federal taxes.

The majority opinion disagrees and cites four of our cases in concluding that the Anti-Injunction Act and § 2201(a) must be interpreted conterminously but *narrowly* – thereby allowing the federal courts to entertain plaintiffs' free-standing challenge to Notice 2006-50 before they have exhausted their administrative remedies with the IRS. Upon examination, however, none of the cited cases actually supports that result.

Our decision in *E. Ky. Welfare Rights Org. v. Simon*, 506 F.2d 1278, 1285 n.11 (D.C. Cir. 1974), is not binding precedent because it was vacated by the Supreme Court on standing grounds, meaning the federal courts had no jurisdiction to hear the case. *See Simon v. E. Ky. Welfare*

*Rights Org.*, 426 U.S. 26, 37, 46 (1976). As the Supreme Court has explained, a decision "vacating the judgment of the Court of Appeals deprives that court's opinion of precedential effect." *County of Los Angeles v. Davis*, 440 U.S. 625, 634 n.6 (1979) (internal quotation marks omitted).

So, too, our pre-*Eastern Kentucky* decision in *"Americans United" Inc. v. Walters*, 477 F.2d 1169, 1175-76 (D.C. Cir. 1973), was reversed by the Supreme Court on other grounds – namely, that the Anti-Injunction Act by its own terms jurisdictionally barred the suit. *See Alexander v. "Americans United" Inc.*, 416 U.S. 752, 758-59 & n.10 (1974). A judicial opinion lacks precedential force if it is not connected to a judgment. Therefore, prior panel decisions that were reversed by the Supreme Court – like those that were vacated – are not binding precedent. *See* Charles A. Sullivan, *On Vacation*, 43 HOUS. L. REV. 1143, 1149 (2006) ("it is not clear why any opinion survives the extinction of the judgment it supports (whether that extinction is by vacatur or reversal), but, if some opinions do survive, it seems strange that the distinction is drawn between judgments which are vacated and those that are reversed"); Jon O. Newman, *Decretal Language: Last Words of an Appellate Opinion*, 70 BROOK. L. REV. 727, 728 (2005) (noting "difference of opinion among judges as to the circumstances in which 'vacated' or 'reversed' should be used in decretal language").[5]

---

[5] To be sure, after a reversal or vacatur by the Supreme Court, a panel may then have to decide the case on remand by addressing issues that were not considered by the Supreme Court. And the panel's post-remand decision and accompanying ratio decidendi may of course become binding precedent. But a prior panel decision that was vacated or reversed by the Supreme Court has no more weight than dicta. It can be analyzed and cited for its persuasive value, but it is not binding.

Finally, the majority opinion cites two later cases that purportedly "re-embraced" the rationale of *Americans United* and *Eastern Kentucky*. Maj. Op. at 20 n.3 (citing *Nat'l Taxpayers Union, Inc. v. United States*, 68 F.3d 1428, 1436-37 (D.C. Cir. 1995) and *Inv. Annuity*, 609 F.2d at 4, 10). But *National Taxpayers Union* and *Investment Annuity* merely reiterated that the statutes were coterminous in the course of concluding that the suits in question were barred by the narrow terms of the Anti-Injunction Act. Neither case therefore had occasion to pass on the key question here: whether the statutes are (i) coterminously narrow and bar declaratory and injunctive relief restraining the assessment or collection of taxes or (ii) coterminously broad and bar declaratory and injunctive relief with respect to federal taxes.[6]

In sum, I respectfully disagree with the majority opinion's decision to aggressively interpret *National Taxpayers Union* and *Investment Annuity* and thereby allow this case to go forward at this time. In my judgment, none of

---

[6] This whole effort in assessing the "coterminous in what direction" question is admittedly a rather odd exercise. I say that because, contrary to what our 1970s-era cases said, the texts of the Anti-Injunction Act and § 2201(a) are of course not coterminous. And courts today likely would not find them coterminous because courts today tend to pay greater attention to statutory text. So at some point, the en banc Court should clear this up and ensure that our case law aligns with the text of the two statutes, as Professor Bittker advocated years ago. *See* Boris I. Bittker & Kenneth M. Kaufman, *Taxes and Civil Rights: "Constitutionalizing" the Internal Revenue Code*, 82 YALE L.J. 51, 58 (1972) ("reducing the Declaratory Judgment Act to a mere echo of § 7421(a) . . . deprives it of any independent significance . . . and the fact that Congress amended the Declaratory Judgment Act in 1935 to exclude controversies 'with respect to Federal taxes' argues for giving the amendment some independent significance"); *cf. Bob Jones Univ.*, 416 U.S. at 732 n.7.

our precedents compels or permits us to disregard the very plain statutory text of § 2201(a). And pursuant to that text, courts may not entertain this kind of free-standing suit for declaratory relief "with respect to Federal taxes." 26 U.S.C. § 2201(a). A refund suit – after exhaustion – is the proper vehicle for plaintiffs to challenge Notice 2006-50. On that basis alone, we should dismiss plaintiffs' suit.

*Second*, even if § 2201(a) does not bar the APA claims, the ripeness doctrine does so. The Supreme Court's decision in *Abbott Laboratories v. Gardner* permits many pre-enforcement challenges to agency rules – and those disputes are, of course, a staple of this Court's diet. 387 U.S. 136 (1967). But *Abbott Laboratories* by no means opens the door to every pre-enforcement challenge to an agency rule. Rather, the ripeness inquiry examines the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration. *See id.* at 148-49. Under the hardship prong of that test, a plaintiff ordinarily may not bring a pre-enforcement challenge to a rule that does not "as a practical matter require[] the plaintiff to adjust his conduct immediately." *Nat'l Park Hospitality Ass'n v. Dep't of the Interior*, 538 U.S. 803, 808 (2003) (internal quotation marks omitted); *see also Ohio Forestry Ass'n v. Sierra Club*, 523 U.S. 726, 733-35 (1998); *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 891 (1990). Therefore, pre-enforcement review typically is more appropriate for regulations imposing burdens than for those (like Notice 2006-50) offering benefits or establishing criteria for benefits. *See Reno v. Catholic Soc. Servs., Inc.*, 509 U.S. 43, 57-59 (1993); 2 RICHARD J. PIERCE, JR. ADMINISTRATIVE LAW TREATISE § 15.14, at 1078-79 (4th ed. 2002). In other words, plaintiffs in such cases must ordinarily apply for benefits (here, for additional tax refunds)

before launching a lawsuit against the agency regulation that sets forth the criteria for the benefits.[7]

Under the governing precedents, plaintiffs' APA challenge to IRS Notice 2006-50 is not ripe. Plaintiffs must file a refund request and first give the IRS a chance to assess the merits of their arguments for additional refunds. After that step, plaintiffs may file a refund suit and complain in court about the Notice. *See Stephenson v. Brady*, No. 90-3042, 1991 WL 22835, at *3-4 (4th Cir. 1991).

The majority opinion says the ripeness doctrine does not apply because this is a post-enforcement suit. That explanation is mystifying. Until plaintiffs seek a larger refund from the IRS and are denied, Notice 2006-50 will not have been enforced against them by the IRS. So this lawsuit is a pre-enforcement suit targeting Notice 2006-50. And the ripeness doctrine, in my judgment, precludes hearing this pre-enforcement case at this time.

## C

Both § 2201(a)'s bar on declaratory relief "with respect to Federal taxes" and the ripeness doctrine exemplify the broad theme that runs throughout administrative law in the tax area. As noted above, we have stated, for example, that "the tax field is marked by the general preclusion of advance declaratory or injunctive relief. . . . For most tax issues and most taxpayers, a subsequent action for refund adequately

---

[7] Courts have also been more reluctant to find a specific pre-enforcement challenge ripe where (as here) a statute (26 U.S.C. §§ 1346, 7422) creates a separate process for review. *See, e.g.*, *Thunder Basin Coal Co. v. Reich*, 510 U.S. 200, 207-209 (1994). That body of case law also counsels against premature adjudication of plaintiffs' claims.

safeguards all appropriate concerns." *Inv. Annuity, Inc. v. Blumenthal*, 609 F.2d 1, 9 (D.C. Cir. 1979). We also have flatly stated that "Congress has preserved the immunity of the United States from declaratory and injunctive relief with respect to all tax controversies except those pertaining to the classification of organizations under § 501(c)" of the Internal Revenue Code. *Murphy v. IRS*, 493 F.3d 170, 174 (D.C. Cir. 2007).

So, too, the leading academic on this issue has explained that the precedents applying § 7421(a), § 7422(a), § 2201(a), and the ripeness doctrine stand "almost unyieldingly against pre-enforcement challenges to Treasury's regulations promulgated in violation of APA procedural requirements." Kristin E. Hickman, *A Problem of Remedy: Responding to Treasury's (Lack of) Compliance with the Administrative Procedure Act Rulemaking Requirements*, 76 GEO. WASH. L. REV. 1153, 1200 (2008). It is true that Professor Hickman argues for changing the state of the law, but she acknowledges frankly that it "is perhaps quixotic to suggest that the courts rethink doctrine firmly rooted in forty years of jurisprudence." *Id.* at 1201.

In charting a new course in this case, the majority opinion refers to the IRS's position in the events surrounding this case as "adamant," "aggressive," "creative," "inventive," "remarkable," "mean," and exhibiting "chutzpah" – and the majority opinion then proclaims that "[n]o agency operates beyond the reach of the law." Maj. Op. at 23. I of course agree wholeheartedly with the sentiment that the IRS must comply with the law. But that sentiment, as I see it, is a red herring in this case. The question here concerns only the *timing* of judicial review, not the *availability* of judicial review.

With respect to the actual issue presented – namely, the timing of judicial review – it is telling that the majority opinion and plaintiffs cite no decision that has entertained an APA challenge to an IRS rule relating to taxes outside the context of a refund suit. The lack of support in the Federal Reporters for entertaining a free-standing, pre-enforcement APA challenge to a tax regulation counsels judicial caution and restraint – and helps demonstrate, in my judgment, the novelty and error of the majority opinion's approach.

The majority opinion claims that the lack of case law *permitting* challenges to tax regulations except in refund suits actually is of no moment because, it says, there are not many opinions expressly *rejecting* this precise kind of free-standing APA challenge. But we could line Constitution Avenue from this Courthouse to the IRS Building with judicial decisions that apply § 2201(a), the Anti-Injunction Act, the statutory exhaustion principle, and the ripeness doctrine and hold that challenges to tax laws and regulations must occur in refund suits. Those many decisions, in my judgment, establish a principle of judicial restraint that plainly covers this suit.

\* \* \*

In sum, plaintiffs' APA claims are barred from review at this time by 28 U.S.C. § 2201(a), or in the alternative, by the ripeness doctrine. I respectfully dissent from the majority opinion's contrary conclusion.