# United States Court of Appeals
## FOR THE DISTRICT OF COLUMBIA CIRCUIT

Argued May 4, 2015          Decided June 19, 2015

No. 15-5010

Z STREET,
APPELLEE

v.

JOHN A. KOSKINEN, IN HIS OFFICIAL CAPACITY AS
COMMISSIONER OF INTERNAL REVENUE,
APPELLANT

Appeal from the United States District Court
for the District of Columbia
(No. 1:12-cv-00401)

*Teresa E. McLaughlin*, Attorney, U.S. Department of Justice, argued the cause for appellant. With her on the briefs were *Gilbert S. Rothenberg* and *Ellen Page DelSole*, Attorneys.

*Jerome M. Marcus* argued the cause for appellee. On the brief was *Jay M. Levin*.

*H. Christopher Bartolomucci* and *Stephen V. Potenza* were on the brief for *amicus curiae* Liberty Institute in support of appellee.

Before: GARLAND, *Chief Judge*, TATEL, *Circuit Judge*, and SENTELLE, *Senior Circuit Judge*.

Opinion for the Court filed by *Circuit Judge* TATEL.

TATEL, *Circuit Judge*: Z Street, a nonprofit organization "devoted to educating the public about Zionism" and "the facts relating to the Middle East," applied for a section 501(c)(3) tax exemption. Based on a conversation its lawyer had with an IRS agent, Z Street alleges that the agency has an "Israel Special Policy" under which applications from organizations holding "political views inconsistent with those espoused by the Obama administration" receive increased "scrutin[y]" that results in such applications "tak[ing] longer to process than those made by organizations without that characteristic." Z Street sued the Commissioner, alleging that the "Israel Special Policy" violates the First Amendment. The Commissioner moved to dismiss, arguing that the action is barred by the Anti-Injunction Act, which prohibits suits to "restrain[] the assessment or collection of any tax." The district court, assuming the truth of Z Street's allegations—as it must at this stage of the litigation—denied the motion, explaining that Z Street was not seeking to restrain the "assessment or collection" of a tax, but rather to prevent the IRS from delaying consideration of its application in violation of the First Amendment. We affirm.

## I.

Because of the "danger that a multitude of spurious suits, or even suits with possible merit, would so interrupt the free flow of revenues as to jeopardize the Nation's fiscal stability," *Cohen v. United States*, 650 F.3d 717, 724 (D.C. Cir. 2011) (en banc) (internal quotation marks and citations omitted), the Anti-Injunction Act provides that "no suit for the purpose of

restraining the assessment or collection of any tax shall be maintained in any court by any person, whether or not such person is the person against whom such tax was assessed," 26 U.S.C. § 7421. "The manifest purpose of [the Act] is to permit the United States to assess and collect taxes alleged to be due without judicial intervention . . . ." *Enochs v. Williams Packing & Navigation Co.*, 370 U.S. 1, 7 (1962); *see also Cohen*, 650 F.3d at 727 (discussing the tax exception to the Declaratory Judgment Act, 28 U.S.C. § 2201(a), which is "coterminous" with the Anti-Injunction Act).

Despite this prohibition, taxpayers have several avenues to challenge the assessment and collection of taxes, including, according to the Commissioner, three that are relevant here. Under section 7422, they can pay and then sue for a refund on the grounds that the tax was "erroneously or illegally assessed or collected." 26 U.S.C. § 7422(a). Nonprofit taxpayers may use section 7422 to challenge the denial or revocation of their tax-exempt status. *See Bob Jones University v. Simon*, 416 U.S. 725, 746 (1974) ("[A] suit for a refund . . . offer[s] petitioner a full, albeit delayed opportunity to litigate the legality of the Service's revocation of tax-exempt status . . . ."). Under section 6213, a taxpayer who receives a deficiency notice "may file a petition with the Tax Court for a redetermination of the deficiency." 26 U.S.C. § 6213(a). This provision also allows a nonprofit organization to litigate its eligibility for a section 501(c)(3) exemption. *See Bob Jones*, 416 U.S. at 730 ("[T]he organization may litigate the legality of the Service's action by petitioning the Tax Court to review a notice of deficiency."). Finally, section 7428 creates an option expressly designed for section 501(c)(3) applicants. If the IRS denies an application, or if it fails to act within 270 days and the organization has taken "all reasonable steps to secure [a] determination," then the applicant can bring a declaratory judgment action in the Tax Court, the Court of

Federal Claims, or the United States District Court for the District of Columbia. 26 U.S.C. § 7428. Designed to ensure "that a taxpayer ha[s] prompt judicial review," *Centre for International Understanding v. Commissioner of Internal Revenue*, 84 T.C. 279, 283 (1985), section 7428 authorizes the court to "make a declaration with respect to [an organization's] initial qualification or continuing qualification" for a tax exemption, 26 U.S.C. § 7428(a).

Z Street alleges that after it applied for a tax exemption in December of 2009, an IRS agent informed its lawyer that the agency has "special concern about applications from organizations whose activities are related to Israel, and that are organizations whose positions contradict the US Administration's Israeli Policy." First Am. Compl. 9 ¶ 18. According to the lawyer, the IRS agent went on to say that "the IRS is carefully scrutinizing organizations that are in any way connected with Israel" and that "these cases are being sent to a special unit in the D.C. office to determine whether the organization's activities contradict the Administration's public policies." *Id.* at 10 ¶¶ 24–25 (internal quotation marks omitted). Based on this conversation, Z Street alleges that the IRS has an "Israel Special Policy," which "mandates that [] applications [from organizations holding views about Israel inconsistent with those espoused by the Obama administration] be scrutinized differently and at greater length, and therefore that they take longer to process than those made by organizations without that characteristic." *Id.* at 11 ¶ 27.

Eight months later—just 32 days shy of the date on which it could have proceeded under section 7428—Z Street sued the Commissioner "[p]ursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201," claiming that the "Israel Special Policy" constitutes "blatant viewpoint discrimination

in violation of the First Amendment," First Am. Compl. 15; *id.* at 15 ¶ 44. It sought a declaration to that effect, as well as an injunction "[b]arring application of the Special Policy to its pending application" and requiring that the IRS adjudicate the application "expeditiously and fairly and without any consideration of whether the positions espoused by the Plaintiff or its officers are or are not consistent or inconsistent with the policy positions taken by the Obama administration." *Id.* at 16. Although Z Street filed its complaint in the Eastern District of Pennsylvania, that court, believing that the suit "is best construed as a controversy arising under [section] 7428," transferred the case to the United States District Court here. *See* Order Transferring Case to the District Court of the United States for the District of Columbia.

The Commissioner moved to dismiss pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). He argued that the court lacked jurisdiction both because the Anti-Injunction Act barred the suit and because the doctrine of sovereign immunity protected the government. Mot. to Dismiss Am. Compl. 1–2; *see also* Memorandum of Law in Support of Mot. to Dismiss Am. Compl. 14–16 (making same argument based on the Declaratory Judgment Act). Additionally, he maintained that the complaint failed to state a claim for injunctive relief since the plaintiff had adequate remedies at law, i.e., a refund suit, or, if Z Street had simply waited another 32 days, a section 7428 action. Mot. to Dismiss Am. Compl. 1. On the merits, the Commissioner disputed Z Street's allegations, contending that "there simply was no viewpoint discrimination" because "there is no 'Israel Special Policy' and Z Street's application has not been subject to 'heightened scrutiny.'" Memorandum of Law in Support of Mot. to Dismiss Am. Compl. 7. But because the Commissioner moved to dismiss under Rules 12(b)(1) and (6), the district court was required to assume that the IRS in

fact has an "Israel Special Policy" that delays the processing of section 501(c)(3) applications from organizations whose views on Israel differ from the administration's. *See American National Insurance Co. v. FDIC*, 642 F.3d 1137, 1139 (D.C. Cir. 2011) (at the motion to dismiss stage a court must "assume the truth of all material factual allegations in the complaint" (internal citations and emphasis omitted)).

The district court denied the Commissioner's motion to dismiss, concluding that "Z Street's First Amendment claim . . . cannot properly be characterized as a lawsuit implicating the 'assessment or collection' of taxes" because the organization "seeks only to have a 'constitutionally valid process' used when its application for Section 501(c)(3) status is evaluated—nothing more and nothing less." *Z Street, Inc. v. Koskinen*, 44 F. Supp. 3d 48, 59, 67 (D.D.C. 2014) (citations omitted). Likewise, the court held, Z Street stated a claim for injunctive relief because "none of the[ other] paths to the courthouse"—a refund suit, a deficiency petition, or a section 7428 action—"would in fact provide Z Street with an adequate remedy for the harm that it has alleged." *Id.* at 66.

At the Commissioner's request, the district court certified its order for interlocutory appeal, *see* Order Granting Mot. to Certify for Interlocutory Appeal; 28 U.S.C. § 1292(b) (allowing district judges to certify orders for immediate appeal when they are "of the opinion that [an] order involves a controlling question of law . . . and that an immediate appeal from the order may materially advance the ultimate termination of the litigation"), and this court granted the requisite permission, *see* Order Granting Petition for Permission to Appeal; 28 U.S.C. § 1292(b) ("The Court of Appeals . . . may . . . in its discretion[] permit an appeal to be taken from such order . . . ."). Here, the Commissioner reiterates his arguments that the Anti-Injunction Act and the

doctrine of sovereign immunity bar this suit. He adds that Z Street's claim is "not yet justiciable" because the alleged policy "has not been 'formalized and . . . felt in a concrete way.'" Appellant's Br. 56 (quoting *Abbott Laboratories v. Gardner*, 387 U.S. 136, 148 (1967)). Given that we are reviewing the denial of a motion to dismiss, "we make legal determinations *de novo*," *American National Insurance Co.*, 642 F.3d at 1139, and, like the district court, assume the truth of Z Street's allegations.

## II.

Before considering the parties' arguments, we think it helpful to summarize the cases they debate and that control the ultimate disposition of this case.

In *Bob Jones University v. Simon*, 416 U.S. 725 (1974), after the IRS moved to withdraw Bob Jones' section 501(c)(3) status because it refused to admit African-American students, the University sued to maintain its exemption. In a companion case, *Alexander v. "Americans United" Inc.*, 416 U.S. 752 (1974), a non-profit group challenged its reclassification from a section 501(c)(3) to a section 501(c)(4) organization due to its lobbying activities. The Court found both suits barred by the Anti-Injunction Act, explaining in *Bob Jones* that "prior to the assessment and collection of any tax, a court may [not] enjoin the Service from revoking [tax-exempt status]." *Bob Jones*, 416 U.S. at 727. The Court brushed aside the challengers' counterarguments. "[T]he constitutional nature of a taxpayer's claim," the Court explained, "is of no consequence under the Anti-Injunction Act." *"Americans United"*, 416 U.S. at 759. And even though Bob Jones insisted that it had sued the IRS to ensure "the maintenance of the flow of contributions, not [to] obstruct[] . . . revenue," the Court saw the situation differently, stating that the

University's "complaint and supporting documents filed in the District Court belie any notion that this is not a suit to enjoin the assessment or collection of federal taxes." *Bob Jones*, 416 U.S. at 738; *see also "Americans United"*, 416 U.S. at 760–61 ("The obvious purpose of respondent's action was to restore advance assurance that donations to it would qualify as charitable deductions under § 170 that would reduce the level of taxes of its donors."). That said, the Court emphasized that "[t]his is not a case in which an aggrieved party has no access at all to judicial review." *Bob Jones*, 716 U.S. at 746. "Were that true," it continued, "our conclusion might well be different." *Id.*

That scenario came to pass in *South Carolina v. Regan*, 465 U.S. 367 (1984), where the state challenged an amendment to the Internal Revenue Code that altered the taxation of certain state-issued bonds. Because South Carolina paid no taxes, it was "unable to utilize any statutory procedure to contest the constitutionality of [the tax]." *Id.* at 380. Under these circumstances, the Court held, South Carolina's suit was not barred by the Anti-Injunction Act. The "Act's purpose and the circumstances of its enactment indicate that Congress did not intend the Act to apply to actions brought by aggrieved parties for whom it has not provided an alternative remedy." *Id.* at 378. Put another way, "the Act was intended to apply only when Congress has provided an alternative avenue for an aggrieved party to litigate its claims." *Id.* at 381.

This circuit has also considered the Anti-Injunction Act, though in a very different situation. In *Cohen v. United States*, 650 F.3d 717 (D.C. Cir. 2011) (en banc), taxpayers challenged a special procedure the IRS had established for refunding an unlawfully collected tax. We rejected the government's argument that the case was barred by the Anti-Injunction Act, explaining that the case did not involve the

"assessment or collection" of taxes because "[t]he IRS previously assessed and collected the excise tax at issue[,] [t]he money is in the U.S. treasury[, and t]he legal right to it has been previously determined." *Id.* at 725. In so ruling, we rejected the IRS's view of "a world in which no challenge to its actions is ever outside the closed loop of its taxing authority." *Id.* at 726. Instead, the Anti-Injunction Act, "as its plain text states, bars suits concerning the 'assessment or collection of any tax[,]' [and] is no obstacle to other claims seeking to enjoin the IRS, regardless of any attenuated connection to the broader regulatory scheme." *Id.* at 727. Accordingly, the Act "requires a careful inquiry into the remedy sought, the statutory basis for that remedy, and any implication the remedy may have on assessment and collection." *Id.* (discussing *We the People Foundation, Inc. v. United States*, 485 F.3d 140 (D.C. Cir. 2007)).

A final series of cases informs our analysis. In *Regan v. Taxation with Representation of Washington*, 461 U.S. 540 (1983), the Supreme Court held that the tax code may not "discriminate invidiously . . . in such a way as to aim at the suppression of dangerous ideas." *Id.* at 548 (internal quotation marks and alteration omitted). That decision, the Court later explained in *Rosenberger v. Rector and Visitors of University of Virginia*, 515 U.S. 819 (1995), "reaffirmed the requirement of viewpoint neutrality in the Government's provision of financial benefits." *Id.* at 834.

These cases, then, stand for the following basic propositions. First, outside of certain statutorily authorized actions, like those brought pursuant to section 7428, the Anti-Injunction Act bars suits to litigate an organization's tax status (*Bob Jones* and *"Americans United"*). Second, the Act does not apply in situations where the plaintiff has no alternative means to challenge the IRS's action (*South*

*Carolina*) or where the claim has no "implication[s]" for tax assessment or collection (*Cohen*). Finally, in administering the tax code, the IRS may not discriminate on the basis of viewpoint (*Regan*).

## III.

The Commissioner argues that *Bob Jones* and *"Americans United"* govern this case. Z Street argues that *Cohen* controls. Neither is correct, though Z Street is much closer to the mark.

Contrary to the Commissioner's contention, *Bob Jones* and *"Americans United"* are quite different from this case given that the plaintiffs there sought to litigate their tax status, *see supra* at 7–8, whereas Z Street seeks to prevent the IRS from unconstitutionally delaying consideration of its application—"not to obtain tax exempt status." Appellee's Br. 18. Indeed, even if Z Street obtains all the relief it seeks, the IRS could, as counsel for the Commissioner conceded at oral argument, *see* Oral Arg. Rec. 6:05–16, still deny its application for any number of reasons. *See* 26 C.F.R. § 1.501(c)(3)-(1) (describing the requirements for the 501(c)(3) exemption). In other words, unlike the plaintiffs in *Bob Jones* and *"Americans United"*, Z Street does not have the "obvious purpose" of securing "assurance that donations" will "qualify as charitable deductions." *"Americans United"*, 416 U.S. 760–61.

The Commissioner nonetheless insists that *Bob Jones* and *"Americans United"* require a broad approach to what constitutes prohibited "tax litigation." Appellant's Br. 30. As explained above, however, in *Cohen* we rejected this view of "a world in which no challenge to [the IRS's] actions is ever outside the closed loop of its taxing authority." *Cohen*, 650

F.3d at 726. The Commissioner points out that even after *Cohen*, this court described the Anti-Injunction Act as "barr[ing] suits that interfere with ancillary functions to tax collection." *Seven-Sky v. Holder*, 661 F.3d 1, 10 (D.C. Cir. 2011), *cert. denied*, 133 S. Ct. 63 (2012). But that language is simply shorthand for what we said in *Cohen*, i.e., that the Act "requires a careful inquiry into the remedy sought, the statutory basis for that remedy, and any implication the remedy may have on assessment and collection." *Cohen*, 650 F.3d at 727.

Our rejection of the Commissioner's broad reading of the Act finds support in the Supreme Court's recent decision in *Direct Marketing Association v. Brohl*, 135 S. Ct. 1124 (2015). There, interpreting the Anti-Injunction Act's cousin, the Tax Injunction Act, which serves a similar function for federal court challenges to state taxes, the Court read "restrain" in that statute as having a "narrow[] meaning . . . captur[ing] only those orders that stop . . . assessment, levy and collection" rather than "merely inhibit" those activities. *Id.* at 1132 (internal quotation marks omitted). True, the two statutes differ: the Tax Injunction Act pairs "restrain" with "'enjoin' and 'suspend'" suggesting that the word is used "in its narrow[] sense," *id.*, while the word "restraining" stands alone in the Anti-Injunction Act. Yet *Brohl's* holding is significant here because the Court "assume[s] that words used in both Acts are generally used in the same way." *Id.* at 1129.

*Bob Jones* and *"Americans United"* thus do not mean that the Anti-Injunction Act bars Z Street's suit. Contrary to Z Street's argument, however, we are unpersuaded that *Cohen* squarely permits it. Recall that *Cohen* requires that we examine Z Street's complaint to determine, among other things, "any implication the remedy [it seeks] may have on

assessment and collection." *Supra* at 9. In *Cohen*, the remedy sought could have no possible "implication" for assessment and collection because the IRS had already assessed and collected the tax—it was in the Treasury. *Id.* By contrast, Z Street's suit arguably could have "implication[s]" for assessment and collection. If, for example, Z Street prevails in this case and obtains a tax exemption earlier than it otherwise would have, contributions to it will be tax deductible earlier, thus reducing the overall assessment and collection of taxes.

In the end, however, we have no need to decide whether such an implication is sufficient to trigger the Anti-Injunction Act. As the Court explained in *South Carolina*, the Act does not apply at all where the plaintiff has no other remedy for its alleged injury—precisely the situation in which Z Street finds itself.

Consider section 7428. According to the Commissioner, if Z Street had just waited an additional 32 days it could have filed suit under this provision and obtained an "adequate remedy." Appellant's Br. 48. But as the Commissioner concedes, section 7428 authorizes a court to issue only "a declaration with respect to [an organization's] qualification" for a section 501(c)(3) exemption, 26 U.S.C. § 7428, and Z Street is not seeking to establish its eligibility for a tax exemption, *supra* at 10. Instead, it seeks an order prohibiting the IRS from delaying consideration of Z Street's section 501(c)(3) application because of the organization's views on Israel. The "only thing we're suing about," Z Street's counsel told us at oral argument, "is delay." Oral Arg. Rec. 51:14–38; *see also id.* at 41:57–42:57 (statement of Z Street's counsel agreeing that all Z Street seeks is an order barring application of the "Israel Special Policy" insofar as it causes delay). In other words, although section 7428 provides a remedy, that remedy cannot address Z Street's alleged injury.

The same is true with respect to the remedies offered by sections 6213 (deficiency petition) and 7422 (refund suit). Under either provision, the court would be limited to reviewing the taxpayer's tax liability—the "deficiency" in the case of section 6213, or whether the tax was "erroneously or illegally collected" in the case of section 7422. 26 U.S.C. § 6213; *id.* § 7422. Neither provision would allow the court to review the allegedly unconstitutional *delay in processing* Z Street's section 501(c)(3) application.

In the words of *South Carolina*, then, Z Street is "unable to utilize any statutory procedure to contest the constitutionality," *South Carolina*, 465 U.S. at 380, of the delay allegedly caused by the IRS's "Israel Special Policy." Under these circumstances, the Anti-Injunction Act does not bar this suit. *Id.* Were it otherwise, the IRS would be free for at least 270 days—the period of time taxpayers must wait to invoke section 7428—to process exemption applications pursuant to different standards and at different rates depending upon the viewpoint of the applicants—a blatant violation of the First Amendment. *See Rosenberger*, 515 U.S. at 834 ("*Regan* . . . reaffirmed the requirement of viewpoint neutrality in the Government's provision of financial benefits. . . ."). Indeed, in situations where a taxpayer elects not to sue under section 7428, the IRS would have even longer since the taxpayer would be unable to invoke either section 6213 or section 7422 until the agency actually denies an exemption and assesses liability.

## IV.

We can easily resolve the Commissioner's remaining arguments. The district court lucidly explained why sovereign immunity presents no bar to Z Street's suit: section 702 of the

Administrative Procedure Act "waives sovereign immunity with respect to suits for nonmonetary damages that allege wrongful action by an agency or its officers or employees, and the instant lawsuit fits precisely those criteria." *Z Street*, 44 F. Supp. 3d at 63. Although the Commissioner never raised his justiciability argument in the district court, that argument fails for the same reason the district court and we have rejected his Anti-Injunction Act argument: Z Street seeks not to restrain "the assessment or collection" of a tax, but rather to obtain relief from unconstitutional delay, the effects of which it is now suffering.

## V.

For the foregoing reasons, we affirm.

*So ordered.*