# United States Court of Appeals
## FOR THE DISTRICT OF COLUMBIA CIRCUIT

Argued December 9, 2019        Decided February 7, 2020

No. 19-5237

RICHARD BLUMENTHAL, ET AL.,
APPELLEES

v.

DONALD J. TRUMP, IN HIS OFFICIAL CAPACITY AS PRESIDENT
OF THE UNITED STATES OF AMERICA,
APPELLANT

Appeal from the United States District Court
for the District of Columbia
(No. 1:17-cv-01154)

*Hashim M. Mooppan*, Deputy Assistant Attorney General, U.S. Department of Justice, argued the cause for appellant. With him on the briefs were *Mark R. Freeman*, *Michael S. Raab*, *Martin V. Totaro*, and *Joshua Revesz*, Attorneys.

*Elizabeth B. Wydra* argued the cause for appellees. With her on the brief were *Brianne J. Gorod* and *Brian R. Frazelle*.

*Katharine M. Mapes* and *Jeffrey M. Bayne* were on the brief for *amici curiae* Separation of Powers Scholars in support of plaintiffs-appellees Richard Blumenthal, et al. and in support of affirmance.

*Walter E. Dellinger*, *III* was on the brief for *amici curiae* Bipartisan Former Members of Congress in support of appellees.

*Ruthanne M. Deutsch* and *Hyland Hunt* were on the brief for *amici curiae* Scholars of Standing, Federal Jurisdiction, and Constitutional Law in support of plaintiffs-appellees.

*Harold Hongju Koh* was on the brief for *amici curiae* Former National Security Officials in support of plaintiffs-appellees.

*Erica C. Lai*, *Melissa H. Maxman*, and *Danielle C. Morello* were on the brief for *amici curiae* Certain Legal Historians in support of plaintiffs-appellees and affirmance.

*Anthony J. May* and *Jean M. Zachariasiewicz* were on the brief for *amici curiae* Administrative Law, Constitutional Law, and Federal Courts Scholars in support of appellees and in support of affirmance.

*Tejinder Singh* was on the brief for *amici curiae* Former Government Ethics Officers supporting plaintiffs-appellees and affirmance.

*Colin E. Wrabley* and *M. Patrick Yingling* were on the brief for *amici curiae* The Niskanen Center, et al. in support of appellees and affirmance of the decision below.

*Robert D. Dinerstein* was on the brief for *amici curiae* Professor Clark D. Cunningham and Professor Jesse Egbert in support of neither party.

Before: HENDERSON, TATEL and GRIFFITH, *Circuit Judges*.

Opinion for the Court filed PER CURIAM.

PER CURIAM: In this case, 215 Members of the Congress (Members) sued President Donald J. Trump based on allegations that he has repeatedly violated the United States Constitution's Foreign Emoluments Clause (Clause). The district court's denial of the President's motion to dismiss begins with a legal truism: "When Members of Congress sue the President in federal court over official action, a court must first determine whether the dispute is a 'Case' or 'Controversy' under Article III of the United States Constitution, rather than a political dispute between the elected branches of government." *Blumenthal v. Trump*, 335 F. Supp. 3d 45, 49–50 (D.D.C. 2018). Although undoubtedly accurate, the district court's observation fails to tell the rest of the story, which story we set forth infra. Because we conclude that the Members lack standing, we reverse the district court and remand with instructions to dismiss their complaint.

I

Troubled that "one of the weak sides of Republics was their being liable to foreign influence & corruption," 1 *The Records of the Federal Convention of 1787* 289 (Max Farrand ed., 1911), the Framers prohibited "Person[s] holding any Office of Profit or Trust under" the United States from accepting from a foreign sovereign "any present, Emolument, Office, or Title, of any kind whatever" without the "Consent of the Congress."[1] Justice Joseph Story described the Clause as "founded in a just jealousy of foreign influence of every sort,"

---

[1] "No Title of Nobility shall be granted by the United States: And no Person holding any Office of Profit or Trust under them, shall, without the Consent of the Congress, accept of any present, Emolument, Office, or Title, of any kind whatever, from any King, Prince, or foreign State." U.S. CONST. art. I, § 9, cl. 8.

although he found it "doubtful" that "in a practical sense, it can produce much effect" because

> [a] patriot will not be likely to be seduced from his duties to his country by the acceptance of any title, or present, from a foreign power. An intriguing, or corrupt agent, will not be restrained from guilty machinations in the service of a foreign state by such constitutional restrictions.

3 Joseph Story, *Commentaries on the Constitution of the United States* § 1346 (Boston, Hilliard, Gray, & Co. 1833). The Members allege that President Trump "has a financial interest in vast business holdings around the world that engage in dealings with foreign governments and receive benefits from those governments" and that "[b]y virtue of that financial interest, [he] has accepted, or necessarily will accept, 'Emoluments' from 'foreign States' while holding the office of President." Second Amended Complaint at ¶ 2, *Blumenthal v. Trump*, No. 17-1154 (D.D.C. June 26, 2019), ECF No. 83 (brackets omitted). They allege the President's failure to seek and obtain congressional consent has "completely nullified," *id.* at ¶ 82, the votes they are authorized to cast to approve or disapprove his acceptance of foreign emoluments. *See id.* at ¶ 3 ("Because the Foreign Emoluments Clause requires the President to obtain 'the Consent of the Congress' before accepting otherwise prohibited 'Emoluments,' Plaintiffs, as members of Congress, must have the opportunity to cast a binding vote that gives or withholds their 'Consent' before the President accepts any such 'Emolument.'") (bracket omitted). They further allege that the Clause is "unique." Appellees' Br. at 6.

First, the Clause imposes a procedural requirement (obtain "the Consent of the Congress") that federal officials must satisfy before they take a specific action (accept "any" emolument from "any . . . foreign State"). U.S. Const. art. I, § 9, cl. 8. This requirement of a successful prior vote, combined with the right of each Senator and Representative to participate in that vote, means that every time the President accepts an emolument without first obtaining congressional consent, Plaintiffs are deprived of their right to vote on whether to consent to its acceptance.

Second, the Foreign Emoluments Clause regulates the *private* conduct of federal officials. Because President Trump is violating the Clause through his private businesses, without the need for government funds or personnel, Congress cannot use its power of the purse—normally the "ultimate weapon of enforcement available to the Congress"—to stop him. *United States v. Richardson*, 418 U.S. 166, 178 n.11 (1974). Without that tool or any other effective means of forcing President Trump to conform his personal conduct to the Clause's requirements, [the Members] have no adequate legislative remedy for the President's denial of their voting rights.

*Id.* at 6–7.

The Members filed their complaint on June 14, 2017, seeking declaratory and injunctive relief against the President in his official capacity. The President moved to dismiss,

arguing that 1) the Members lack standing; 2) no cause of action authorized their lawsuit; 3) they failed to state a claim upon which relief could be granted; and 4) the requested relief, an injunction against the President in his official capacity, violates the Constitution. Statement of Points and Authorities in Support of Defendant's Motion to Dismiss, *Blumenthal*, 335 F. Supp. 3d 45 (D.D.C. 2018) (No. 17-1154), ECF No. 15-1. The district court bifurcated the issues, addressed standing first and held that the Members "sustained their burden to show that they have standing to bring their claims." *Blumenthal*, 335 F. Supp. 3d at 54. The President then moved to certify the district court's standing order for interlocutory appeal under 28 U.S.C. § 1292(b), Defendant's Motion for Certification of the Court's September 28, 2018 Order Pursuant to 28 U.S.C. § 1292(b), *Blumenthal v. Trump*, 382 F. Supp. 3d 77 (D.D.C. 2019) (No. 17-1154), ECF No. 60, which motion was denied on June 25, 2019, 382 F. Supp. 3d at 83. While the certification motion was pending, the district court denied the remainder of the President's motion to dismiss, holding that the Members had an implied equitable cause of action for injunctive relief and that they had stated a claim under the Clause. *Blumenthal v. Trump*, 373 F. Supp. 3d 191, 207–09 (D.D.C. 2019). The President again moved for interlocutory appeal, Motion for Certification for Interlocutory Appeal, 382 F. Supp. 3d 77 (D.D.C. 2019) (No. 17-1154), ECF No. 71, and this motion was also denied, 382 F. Supp. 3d at 77. Having exhausted his options in district court, the President petitioned our court for a writ of mandamus. Petition for a Writ of Mandamus to the United States District Court for the District of Columbia & Motion for Stay of District Court Proceedings Pending Mandamus, *In re Trump*, 781 F. App'x 1 (D.C. Cir. 2019) (No. 19-5196). We denied the petition without prejudice but remanded the matter "for immediate reconsideration of the motion to certify." *In re Trump*, 781 F. App'x at 2. On reconsideration, the district court certified both dismissal

denials for interlocutory appeal and stayed its proceedings. *Blumenthal v. Trump*, No. 17-1154, 2019 WL 3948478, at *3 (D.D.C. Aug. 21, 2019). We then granted the interlocutory appeal. *In re Trump*, No. 19-8005, 2019 WL 4200443, at *1 (D.C. Cir. Sept. 4, 2019).

On appeal of a dismissal denial, we review the district court's legal determinations de novo and assume the truth of the plaintiff's material factual allegations. *Z Street v. Koskinen*, 791 F.3d 24, 28 (D.C. Cir. 2015). The district court's jurisdiction "aris[es] under the Constitution . . . of the United States." 28 U.S.C. § 1331. We have jurisdiction under 28 U.S.C. § 1292(b).

## II

"[N]o principle is more fundamental to the judiciary's proper role in our system of government than the constitutional limitation of federal-court jurisdiction to actual cases or controversies. Standing to sue is a doctrine rooted in the traditional understanding of a case or controversy." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016) (quoting *Raines v. Byrd*, 521 U.S. 811, 818 (1997)) (bracket and quotation marks omitted). To establish Article III standing, a plaintiff must, as an "irreducible constitutional minimum[,] . . . (1) suffer[] an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Id.* (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992) (quotation marks omitted)). Put differently, our standing inquiry precedes our merits analysis and "focuses on whether the plaintiff is the proper party to bring [the] suit."[2] *Raines*, 521 U.S. at 818.

---

[2] Different plaintiffs have sued under both the Foreign and Domestic Emoluments Clauses, *see* U.S. CONST. art. II, § 1, cl. 7, in

*Raines* is our starting point when individual members of the Congress seek judicial remedies. In that case, six members of the Congress challenged the constitutionality of the Line Item Veto Act, 2 U.S.C. §§ 691 *et seq.* (1994 ed., Supp. II), claiming that it "unconstitutionally expand[ed] the President's power, and violate[d] the requirements of bicameral passage and presentment by granting to the President, acting alone, the authority to 'cancel' and thus repeal provisions of federal law," *Raines*, 521 U.S. at 816 (first quotation marks omitted). The *Raines* plaintiffs alleged they were harmed because the statute "diluted their Article I voting power." *Id.* at 817 (bracket omitted). The district court found the *Raines* plaintiffs had standing but, on direct appeal, the Supreme Court reversed, holding that they lacked standing.

This case is really no different from *Raines*. The Members were not singled out—their alleged injury is shared by the 320 members of the Congress who did not join the lawsuit—and their claim is based entirely on the loss of political power. *See* Second Amended Complaint at ¶ 5, *Blumenthal v. Trump*, No. 17-1154 (D.D.C. June 26, 2019), ECF No. 83 ("Defendant has . . . denied Plaintiffs the opportunity to give or withhold their 'Consent' to his acceptance of individual emoluments and has injured them in their roles as members of Congress."). We can, therefore, resolve this case by simply applying *Raines*. That is, we need not—and do not—consider whether or how *Raines*

---

cases currently traversing the courts. *See Citizens for Responsibility & Ethics in Washington v. Trump*, 939 F.3d 131 (2d Cir. 2019) (private parties in hospitality industry allege harm to their business interests caused by the President's unauthorized receipt of emoluments.); *In re Trump*, 928 F.3d 360, 365 (4th Cir.) (District of Columbia and State of Maryland allege "harm to their sovereign and/or quasi-sovereign interests, as well as proprietary and other financial harms") (quotation marks omitted), *reh'g en banc granted*, 780 F. App'x 36 (4th Cir. 2019).

applies elsewhere in order to determine that it plainly applies here. *See Cohen v. Bd. of Trs. of the Univ. of the Dist. of Columbia*, 819 F.3d 476, 485 (D.C. Cir. 2016) (The "cardinal principle of judicial restraint" is "if it is not necessary to decide more, it is necessary not to decide more." (quoting *PDK Labs, Inc. v. D.E.A.*, 362 F.3d 786, 799 (D.C. Cir. 2004) (Roberts, J., concurring in part and concurring in the judgment))).

The Supreme Court's recent summary reading of *Raines* that "individual members" of the Congress "lack standing to assert the institutional interests of a legislature" in the same way "a single House of a bicameral legislature lacks capacity to assert interests belonging to the legislature as a whole," *Va. House of Delegates v. Bethune-Hill*, 139 S. Ct. 1945, 1953–54 (2019), puts paid to any doubt regarding the Members' lack of standing. Here, the (individual) Members concededly seek to do precisely what *Bethune-Hill* forbids. *See* Appellees' Br. at 12 (asserting Members' entitlement "to vote on whether to consent to an official's acceptance of a foreign emolument before he accepts it . . . is not a private right enjoyed in [his] personal capacity, but rather a prerogative of his office.").

The district court erred in holding that the Members suffered an injury based on "[t]he President . . . depriving [them] of the opportunity to give or withhold their consent [to foreign emoluments], thereby injuring them in their roles as members of Congress." *Id.* at 62 (quotation marks omitted). After *Raines* and *Bethune-Hill*, only an institution can assert an institutional injury provided the injury is not "wholly abstract and widely dispersed." *Raines*, 521 U.S. at 829.[3]

---

[3] The High Court recognized a narrow exception in *Coleman v. Miller*, 307 U.S. 433 (1939), in which it held that members of the Kansas legislature had standing to challenge the "nullification" of their votes on a proposed constitutional amendment. But *Coleman*—

The district court misread *Raines* in declaring that "*Raines . . . teaches* that it is not necessary for an institutional claim to be brought by or on behalf of the institution." *Blumenthal*, 335 F. Supp. 3d at 58 (emphasis added). Its confusion may be partially due to timing—the district court ruled before *Bethune-Hill*, which was decided the following year.

Our standing inquiry is "especially rigorous" in a case like this, where "reaching the merits of the dispute would force us to decide whether an action taken by one of the other two branches of the Federal Government was unconstitutional." *Id.* at 819–20; *see also Ariz. State Legislature v. Ariz. Indep. Redistricting Comm'n*, 135 S. Ct. 2652, 2665 n.12 (2015) ("[S]uit between Congress and the President would raise separation-of-powers concerns absent" in litigation brought by state legislature). Here, regardless of rigor, our conclusion is straightforward because the Members—29 Senators and 186 Members of the House of Representatives—do not constitute a majority of either body and are, therefore, powerless to approve or deny the President's acceptance of foreign emoluments. *See United States v. Ballin*, 144 U.S. 1, 7 (1892) ("The two houses of [C]ongress are legislative bodies representing larger constituencies. Power is not vested in any one individual, but in the aggregate of the members who compose the body[.]"). For standing, the Members' inability to act determinatively is important, *see Raines*, 521 U.S. at 829, and, conversely, the size of their cohort is not—so long as it is too small to act. That is, we assess this complaint—filed by 215 Members—no

---

to the extent it survives—is inapposite here because it "stands (at most) for the proposition that legislators *whose votes would have been sufficient* to defeat (or enact) a specific legislative Act have standing to sue if that legislative action goes into effect (or does not go into effect), on the ground that their votes have been completely nullified." *Raines*, 521 U.S. at 823 (emphasis added) (citation omitted).

differently from our assessment of a complaint filed by a single Member.[4]

Because *Raines* and *Bethune-Hill* control this case, we begin and end our analysis with them.[5]

The Members can, and likely will, continue to use their weighty voices to make their case to the American people, their colleagues in the Congress and the President himself, all of whom are free to engage that argument as they see fit. But we will not—indeed we *cannot*—participate in this debate. The Constitution permits the Judiciary to speak only in the context of an Article III case or controversy and this lawsuit presents neither.

Because the district court bifurcated the motion to dismiss proceedings, two of its judgments are before us on appeal. With regard to the first, in which the district court held that the Members have standing, *Blumenthal*, 335 F. Supp. 3d 45, we reverse and remand with instructions to dismiss the complaint. The second, in which the district court held that the Members

---

[4] The Members do not represent either House of the Congress, an issue the Members concede, *see* Transcript of Oral Argument at 24, *Blumenthal v. Trump*, No. 19-5237 (D.C. Cir. Dec. 9, 2019) ("JUDGE GRIFFITH: You are not here representing the House of Representatives, correct? MS. WYDRA: Correct. . . . JUDGE GRIFFITH: You are not here representing the Senate of the United States. MS. WYDRA: You are absolutely correct."), much less the entire Legislative Branch.

[5] Our own precedent confirms that the Members lack standing. *See Chenoweth v. Clinton*, 181 F.3d 112 (D.C. Cir. 1999) (four House members lacked standing to challenge executive order signed by President); *Campbell v. Clinton*, 203 F.3d 19 (D.C. Cir. 2000) (thirty-one congressmen lacked standing to seek declaratory judgment that President's use of force against Yugoslavia was unlawful).

have a cause of action and have stated a claim, *Blumenthal*, 373 F. Supp. 3d 191, is vacated as moot.

*So ordered.*